2011R01020/JMM

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 12- 91(CCC) |
| v. | : | 18 U.S.C. §§ 371 |
| ULRICH DAVIS | : | |

INFORMATION

The defendant having waived in open court prosecution by indictment, the United States Attorney for the District of New Jersey charges:

    1.    At all times relevant to this Information:

### Background

    a.    Defendant ULRICH DAVIS was a resident of Pumerend, The Netherlands, and was the Sales and Business Development Manager of a freight forwarding company located in The Netherlands ("Netherlands Freight Forwarding Company").

    b.    Netherlands Freight Forwarding Company, a subsidiary of an Austrian-based company, was registered in The Netherlands. Netherlands Freight Forwarding Company was a firm involved in the facilitation of importing, exporting, and transshipping cargo to and from The Netherlands.

    c.    A freight forwarding company located in New York ("New York Freight Forwarding Company") was the U.S. subsidiary of the Austrian-based company. New York Freight Forwarding Company was a firm involved in the facilitation of

importing, exporting, and transshipping cargo to and from the United States.

  d. A company located in New Jersey ("New Jersey Company") was in the business of reselling chemicals, lubricants, sealants, and other products used in the aircraft industry.

  e. M., a co-conspirator who is not charged as a defendant herein, was a representative of Company A, a company located in Country A that purchased U.S. origin goods from the New Jersey Company, among other companies, for businesses and governmental agencies of Iran.

### The Federal Agency

  f. The U.S. Department of Commerce, Bureau of Industry and Security ("BIS"), was responsible for ensuring an export control and treaty compliance system and promoting continued U.S. leadership in strategic technologies. Items subject to BIS's regulatory jurisdiction included goods that could have had commercial uses, but also could have had military applications.

  g. To accomplish its objectives, BIS administered, and amended as necessary, the Export Administration Regulations ("EAR"), 15 C.F.R. Parts 730-774, which set forth license requirements and licensing policy for the exports of dual-use items.

## Export Administration Regulations

h. The EAR identified items over which the U.S. Department of Commerce, BIS exercised regulatory jurisdiction. Through the EAR, BIS imposed a license or other requirement before an item subject to the EAR could be lawfully exported from the United States or lawfully reexported from another country. The EAR also allowed for the issuance of a Denial Order prohibiting or restricting export privileges. The pertinent sections of the EAR were as follows:

> 15 C.F.R. Part 766.24(b): Issuance. The Assistant Secretary [of the U.S. Department of Commerce] may issue an order temporarily denying to a person any or all of the export privileges described in part 764 of the EAR upon a showing by BIS that the order is necessary in the public interest to prevent an imminent violation of the EAA, the EAR, or any order, license or authorization issued thereunder.
>
> 15 C.F.R. § 736.2(b): General prohibitions. The following . . . general prohibitions describe certain exports, reexports, and other conduct, subject to the scope of the EAR, in which you may not engage unless you either have a license from the Bureau of Industry and Security (BIS) . . .
>
> 15 C.F.R. § 736.2(b)(4): General Prohbition Four (Denial Orders) - Engaging in actions prohibited by a denial order. (i) You may not take any action that is prohibited by a denial order issued under part 766 of the EAR, Administrative Enforcement Proceedings.
>
> 15 C.F.R. § 764.2(e): Acting with knowledge of a violation. No person may order, buy, remove, conceal, store, use, sell, loan, dispose of, transfer, transport, finance,

3

>     forward, or otherwise service, . . . , any
>     item exported or to be exported from the
>     United States, or that is otherwise subject
>     to the EAR, with knowledge that a violation
>     of the EAA, the EAR, or any order, license or
>     authorization issued thereunder, has occurred
>     . . . .

### The Temporary Denial Order

2.  On or about October 1, 2007, an Assistant Secretary of Commerce for Export Enforcement, at the behest of the U.S. Department of Commerce, BIS, through its Office of Export Enforcement, issued a Temporary Denial Order ("TDO") denying the export privileges under the EAR of Company A, among others. The Assistant Secretary of Commerce found that the evidence presented by BIS demonstrated that Company A, among others, knowingly violated the EAR, that such violations were deliberate and covert, and that there was a likelihood of future violations, particularly given the nature of the transactions. The TDO prohibited Company A, among others, from any involvement in the export, reexport or transshipment of U.S. origin goods subject to the EAR. The TDO also prohibited any person from directly or indirectly exporting or reexporting to or on behalf of the entities subject to the TDO, including Company A, any item subject to the EAR, which included U.S. origin goods.

### The Conspiracy

3.  From in or about October 2007 through in or about January 2008, in the District of New Jersey and elsewhere, defendant

### ULRICH DAVIS

did knowingly and intentionally conspire and agree with M. and others to defraud the United States by impeding, impairing, obstructing, and defeating the lawful function of the U.S. Department of Commerce, BIS in administering its export laws and regulations, by attempting to export U.S. origin items in contravention of a TDO, by deceit, craft, trickery, and dishonest means.

### The Object of the Conspiracy

4.  The object of the conspiracy was for the conspirators to obtain money and property by exporting and causing the exporting of U.S. origin items in violation of United States law.

### Manner and Means of the Conspiracy

5.  It was a part of the conspiracy that defendant ULRICH DAVIS and M. arranged for export and transshipment of U.S.-origin goods after the issuance of the TDO.

6.  It was a further part of the conspiracy that defendant ULRICH DAVIS directed New York Freight Forwarding Company to arrange for a trucking company to pick up commodities

from New Jersey Company and transport them to New York on behalf of Company A.

7. It was a further part of the conspiracy that New York Freight Forwarding Company would forward the commodities to Netherlands Freight Forwarding Company, and that defendant ULRICH DAVIS, on behalf of Company A, would transship the commodities to their destination in Iran after the issuance of the TDO.

Overt Acts

8. Beginning outside the jurisdiction of any particular State or district, and later within the District of New Jersey, and elsewhere, in furtherance of the conspiracy and to effect the object thereof, defendant ULRICH DAVIS, his co-conspirator, and others, committed and caused to be committed, the following acts:

    a. On or about October 22, 2007, Company A issued an invoice to a company located in Iran for the purchase of acrylic adhesives and spray-paint coatings ("the Goods") that were obtained from the New Jersey Company after the issuance of the TDO. The Goods were subject to the EAR.

    b. On or about November 15, 2007, defendant ULRICH DAVIS, who was listed and who signed as the Issuing Carrier or Agent of The Netherlands Freight Forwarding Company, completed an Air Waybill that represented that the Goods obtained from the New Jersey Company were to be forwarded on behalf of

Company A to a company located in Iran after the issuance of the TDO.

        c.  On or about January 24, 2008, defendant ULRICH DAVIS responded to unindicted co-conspirator M., of Company A, located in Country A, and copied others at The Netherlands Freight Forwarding Company as follows:

> Dear M.,
>
> Understandable your reaction regarding our acting in the service which we provide so far and i [sic] totally agree upto [sic] certain level.
>
> 99% of these goods were destined to be send [sic] to Teheran [sic]/Iran, which was and still is a very difficult destination due to political reasons.
>
> We have handled shipments to Teheran [sic] for various customers who had to shut down their operation because they were doing business with Teheran [sic]/Iran and inspite [sic] of the risk we take we always handled your shipments in a good manner . . . .
>
> Best Regards
>
> ULRICH DAVIS / Manager Business Development

        d.  On or about January 28, 2008, defendant ULRICH DAVIS e-mailed co-conspirator M. as follows:

> Dear M.,
>
> I have transferred your message to my collegue [sic] in New York and he will take care for the ocean freight. I checked friday [sic] night late how the current situation is in Teheran [sic] and seems that everyhthing [sic] is back to normal concerning backlogs and embargoes. We will send the big shipment

to THR, must we reroute the small shipments aswell.? [sic]

Please reply today.

Best regards,

Ulrich Davis/Manager Business Development

<u>Failure to Obtain Relief from the Temporary Denial Order</u>

9. At no point during the transaction described in the overt acts enumerated above did any of the conspirators apply for or seek relief, exception, or any other authorization from the TDO.

In violation of Title 18, United States Code, Section 371.

PAUL J. FISHMAN
United States Attorney

CASE NUMBER: 12-CR-91(CCC)

# United States District Court
## District of New Jersey

UNITED STATES OF AMERICA

v.

ULRICH DAVIS

# INFORMATION FOR

18 U.S.C § 371

**PAUL J. FISHMAN**
UNITED STATES ATTORNEY, NEWARK, NEW JERSEY

JOYCE M. MALLIET
ASSISTANT U.S. ATTORNEY
NEWARK, NEW JERSEY
973-645-2876